UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| LA. MUN. RISK MGMT. AGENCY, | ) | |
| Plaintiff, | ) | 3:22-CV-00104-DCLC-JEM |
| v. | ) | |
| TEAM HEALTH HOLDINGS, INC., *et al.*, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants' Team Health Holdings, Inc., AmeriTeam Services, LLC, HCFS Health Care Financial Services, LLC, and ACS Primary Care Physicians Louisiana PC (collectively, "TeamHealth") Motion to Dismiss [Doc. 28] and Plaintiff Louisiana Municipal Risk Management Agency's ("LMRMA") Motion to Amend [Doc. 35]. The parties have responded [Doc. 33, 38] and replied [Doc. 37, 39] to each motion. These matters are now ripe for resolution. For the reasons that follow, TeamHealth's Motion to Dismiss [Doc. 28] is **GRANTED**, and LMRMA's Motion to Amend [Doc. 35] is **DENIED**.

**I.    BACKGROUND**

This matter concerns an allegedly fraudulent scheme by TeamHealth to charge inflated prices for the medical services it provides. LMRMA is an "interlocal risk management agency" created under Louisiana law [Doc. 27, ¶ 12]. According to LMRMA, it has authority over a "group self-insurance fund formed from the contributions of its members in order to pool together workers' compensation risks." [*Id.*, ¶ 13]. LMRMA comprises local governments and municipalities in Louisiana that contribute their resources to the self-insurance fund to provide workers' compensation benefits to their employees, such as police officers and first responders

[*Id.*].  LMRMA contends that, not only does it have authority over that self-insurance fund, "it legally is the fund." [*Id.*].  LMRMA receives assistance in administering the self-insurance fund from Risk Management, Inc. ("RMI"), a nonparty in this matter [*Id.*, ¶ 14].

TeamHealth is one of the largest emergency room staffing, billing, and collections companies in the United States [*Id.*, ¶¶ 32, 42].  Specifically, TeamHealth acquires medical groups, who then contract with hospitals to staff emergency rooms with doctors and medical personnel [*Id.*, ¶¶ 24-25, 46].  Team Health Holdings, Inc. is a Delaware corporation that is a holding company for the TeamHealth System [*Id.*, ¶ 19].  AmeriTeam Services, LLC is a Tennessee company that employs the officers and administrators of the TeamHealth System, sets policies for the System, and provides support operations to the System [*Id.*, ¶ 20].  HCFS Health Care Financial Services, LLC ("HCFS") is a Florida company that provides billing, coding, and collection services for TeamHealth's medical groups [*Id.*, ¶ 21].  ACS Primary Care Physicians Louisiana PC is a TeamHealth affiliate that provides medical services in Louisiana [*Id.*, ¶ 22].  ACS provided medical care to local government employees in Louisiana who were covered by the self-insurance fund that LMRMA administers.  In 2017, Blackstone, a private equity firm, acquired TeamHealth for $6.1 billion [*Id.*, ¶ 25].

LMRMA explains that it received claims from TeamHealth, reviewed those claims, and then paid the claims according to Louisiana's workers' compensation schedule [*Id.*, ¶¶ 16, 35].  It asserts that the volume of claims it processes prevents it from reviewing each and every claim thoroughly [*Id.*, ¶ 52].  Further, LMRMA relies on TeamHealth's attestation that the claims are accurate [*Id.*, ¶¶ 38, 52].  When submitting claims, TeamHealth uses Current Procedural Terminology ("CPT") codes and a certificate that attests the claim is "true, accurate, and complete." [*Id.*, ¶¶ 48, 57].  CPT codes denote the type and degree of medical care that a patient received from a provider by converting a medical record into a corresponding code [Doc. 27, ¶ 48].

2

The claims LMRMA receives typically are unaccompanied by medical records to substantiate the services provided in the claims [*Id.*, ¶ 54]. TeamHealth uses non-medical staff to bill claims to insurers and claims administrators, like LMRMA [*Id.*, ¶¶ 41, 47-50]. HCFS is the entity that performs the billing and coding for TeamHealth [*Id.*, ¶¶ 47-49]. LMRMA contends that HCFS bills claims administrators according to policies set by Team Health Holdings, Inc. and AmeriTeam Services, LLC [*Id.*, ¶¶ 19, 47, 92-93]. TeamHealth's medical personnel are not involved in the billing or coding process [*Id.*, ¶ 50].

LMRMA contends that, since 2018, TeamHealth covertly and methodically engaged in upcoding [*Id.*, ¶¶ 3, 59-60, 73, 80, 89, 101]. Upcoding occurs when a medical provider submits a claim using an inaccurate CPT code that denotes a higher level of medical care than was provided to receive a larger payment for the services actually rendered by the provider [*Id.*, ¶¶ 1-2, 8]. In short, upcoding causes a claims administrator to overpay on a claim for medical services [*Id.*]. For emergency room services, TeamHealth uses CPT codes ranging from 99281 to 99285, with higher numbers indicating more complex treatment that is charged at a higher rate [*Id.*, ¶¶ 55-56]. For example, LMRMA pays on average $40.00 for services coded at 99281 while paying $296.00 for services coded at 99285, according to Louisiana's workers' compensation rate schedule [*Id.*, ¶ 55].

LMRMA "performed a limited search of its records" to find examples of TeamHealth's alleged upcoding for claims it received since 2018 [*Id.*, ¶ 73]. LMRMA found 11 instances where an individual received care in Louisiana and TeamHealth used one of the CPT codes associated with emergency room medical care [*Id.*]. Of those 11 instances, LMRMA alleges that nine of the claims were upcoded using an inaccurate CPT code[1] [*Id.*, ¶ 74]. According to LMRMA, the rate of TeamHealth's alleged upcoding "was significant to the point that TeamHealth's own failure to

---

[1] LMRMA explains that it hired a medical coding expert to examine the 11 instances identified and that his findings showed nine of those claims were upcoded [Doc. 27, ¶¶ 75-76].

3

identify it, control and end it reflects intentional misconduct or recklessness on TeamHealth's part . . . ." [*Id.*, ¶ 95]. LMRMA similarly notes TeamHealth's allegedly high error rate for upcoded claims as indicative of the absence of mistake [*Id.*, ¶ 96].

LMRMA asserts that when TeamHealth overcharged for its medical services, LMRMA was damaged [*Id.*, ¶ 13]. It does not state, however, the exact nature of its injury other than repeating that it was the "payor" for TeamHealth's claims to the group self-fund fund it oversees [*Id.*, ¶¶ 1, 7, 59-60, 66, 72, 110, 112, 147, 159, 171]. LMRMA does not allege that it suffered a monetary loss to its own assets because of TeamHealth's alleged upcoding, and it does not contend that it suffered an indirect monetary harm from TeamHealth's alleged conduct. LMRMA focuses its allegations on the overpayments made from the group self-insurance fund to which its local government members contributed [*See, e.g.*, *id.*, ¶ 72].

LMRMA brings the instant suit to recover for TeamHealth's alleged systemic upcoding. LMRMA also seeks class certification to represent a class of "[a]ll self-funded plans and payors that compensated TeamHealth or an entity billing on its behalf for medical treatment in the United States or its territories during the four years prior to the filing of the Complaint in this action." [*Id.*, ¶ 110]. In its Second Amended Complaint, LMRMA alleges claims for: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) conspiracy to violate the RICO Act; and (3) unjust enrichment [*Id.*, ¶¶ 123-75]. TeamHealth now moves to dismiss LMRMA's Second Amended Complaint [Doc. 28]. Additionally, LMRMA seeks to amend its class definition [Doc. 35].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires the complaint to contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss for lack of standing is properly characterized as a motion to dismiss for lack of

4

subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). *Stalley v. Methodist Healthcare*, 517 F.3d 911, 916 (6th Cir. 2008). "[W]here subject matter jurisdiction is challenged under Rule 12(b)(1) . . . the *plaintiff* has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Industries, Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

"A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of the subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis," while "[a] factual attack challenges the factual existence of subject matter jurisdiction." *Id.* This distinction is important because if the defendant makes a facial attack, the Court must take all of the allegations in the complaint as true to determine "whether the plaintiff has *alleged* a basis for subject matter jurisdiction." *Id.* (emphasis added). But if the defendant makes a factual attack, the Court may consider and weigh evidence, including evidence outside of the pleadings, to determine whether the plaintiff has carried the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936).

### III. DISCUSSION

#### A. TeamHealth's Motion to Dismiss

TeamHealth argues, in part, that LMRMA has failed to allege a particularized injury-in-fact to have standing in federal court [Doc. 29, pg. 18]. LMRMA responds that it has adequately alleged an injury-in-fact for standing purposes [Doc. 33, pg. 10]. "Article III limits the judicial power to resolving actual 'Cases' and 'Controversies,' not theoretical questions." *Buchholz v. Meyer Njus Tanick, PA*, 946 F.3d 855, 860 (6th Cir. 2020) (quoting U.S. Const. Art. III, § 2). "The

5

party invoking federal jurisdiction bears the burden of establishing [standing]." *Lujan v. Def. of Wildlife*, 504 U.S. 555, 561 (1992). To establish standing, "a plaintiff must show that [it] has suffered an injury, that the defendant's conduct likely caused the injury, and that the relief sought will likely redress the injury." *Ass'n of Am. Physicians & Surgeons v. Food & Drug Admin.*, 13 F.4th 531, 537 (6th Cir. 2021). A plaintiff that cannot show all three elements of standing has not presented a case or controversy that this Court can resolve. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). Because TeamHealth attacks only LMRMA's showing as to whether it has suffered an injury-in-fact, the Court confines its discussion to that element.

A plaintiff wishing to invoke this Court's jurisdiction must show that it suffered an injury-in-fact that is concrete, particularized, and actual or imminent. *See id.* (citing *Lujan*, 504 U.S. at 560–61). "For an injury to be particularized, it must affect the plaintiff in a personal and individualized way." *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 581–82 (6th Cir. 2016) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). TeamHealth's primary challenge to LMRMA's standing is that its alleged conduct has not caused a monetary injury *to* LMRMA [Doc. 29, pgs. 18-22]. Rather, TeamHealth asserts that its alleged upcoding harms the local governments whose financial contributions form the fund that LMRMA administers [*Id.*]. Under TeamHealth's theory, LMRMA does not suffer an injury for standing purposes because it was not monetarily harmed by the upcoding about which it complains [*Id.*]. LMRMA responds that it is the payor for the allegedly overcharged claims TeamHealth submitted [Doc. 33, pg. 11]. It states that it was the "first and only" recipient and payor of the TeamHealth invoices at issue [*Id.*]. TeamHealth replies that LMRMA was never at risk financially for any alleged upcoding [Doc. 37, pg. 6]. According to TeamHealth, Louisiana law shows that a group self-insurance fund is formed from the contributions of local governments and not LMRMA's own money [*Id.*, pg. 7]. Lastly,

6

TeamHealth notes that LMRMA is not a fiduciary of the self-funded insurance plans it administers [*Id.*, pg. 9].

Article III does not allow federal courts to adjudicate hypothetical or abstract disputes. *See Buchholz*, 946 F.3d at 860. "A plaintiff must establish that [it] has a 'personal stake in the outcome of the controversy.'" *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Traditional tangible harms, such as physical or monetary harms, readily qualify as concrete injuries sufficient to provide standing to a plaintiff. *See TransUnion LLC*, 141 S. Ct. at 2203. "If a defendant has caused physical or monetary injury *to the plaintiff*, the plaintiff has suffered a concrete injury in fact under Article III." *Id.* (emphasis added). In other words, the injury-in-fact requirement means that a "party seeking review [itself] be among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972). Moreover, a "fundamental restriction on [the Court's] authority" is that "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Hollingsworth v. Perry*, 570 U.S. 693, 708 (2013) (quoting *Powers v. Ohio*, 499 U.S. 400, 410 (1991)).

LMRMA's status as an administrator for a "group self-insurance fund" proves dispositive as to its standing [Doc. 27, pg. 6]. "In a self-insured plan, the employer elects to pay the health care costs of its covered employees using its own funds, rather than paying premiums to an insurer in exchange for the insurer's assumption of the risk to pay the cost of employer-promised health care." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598. 601 (6th Cir. 2007). Similarly, Black's Law Dictionary defines "self-insurance" as "a plan under which a business maintains its own special fund to cover any loss." *Self-Insurance*, *Black's Law Dictionary* (11th ed. 2019). Here, local governments in Louisiana have pooled their money together to create a self-insurance fund for their employees. [Doc. 27, ¶ 13]; La. Stat. Ann. § 33:1342. When the municipal

7

employees receive health care from a provider, the "health care provider[] bill[s] [an] administrator for the health care services, and the administrator then collects the full payment from the employers, along with a processing fee." *Loren*, 505 F.3d at 602. LMRMA plays the role of the administrator for the local governments that have contributed to the group self-insurance fund. [*Id.*]; La. Stat. Ann. § 33:1343. Louisiana law permits the creation of an entity like LMRMA to facilitate the local governments' insurance needs, but Louisiana law makes clear that LMRMA, and other entities like it, are not themselves insurance providers. *Id.* § 33:1345. In this situation then, TeamHealth's alleged upcoding does not injure LMRMA. *See Soehnlen*, 844 F.3d at 581–82. Instead, TeamHealth's alleged conduct would harm the local governments that contribute to the self-insurance fund that LMRMA administers on behalf of those governments.

LMRMA makes much of the fact that this Court previously denied a motion to dismiss in a similar case between United Healthcare ("United") and TeamHealth. [Doc. 33, pgs. 16-17]. LMRMA cites this Court's order back to it as reason enough to deny TeamHealth's motion here. [*Id.*]. There are two fundamental differences between United and LMRMA, however, that prevent this Court from merely copying its prior ruling. First, United is an insurance company that provides fully insured plans to employers, unlike LMRMA. *United Healthcare Servs., Inc., et al. v. Team Health Holdings, Inc., et al.*, No. 3:21-CV-00364-DCLC-JEM, 2022 WL 1481171, at *1 (E.D. Tenn. May 10, 2022). Employers pay United a premium for those fully insured plans and, in turn, United assumes the risk of providing health coverage for insured events. *Mich. Catholic Conf. and Catholic Family Servs. v. Burwell*, 807 F.3d 738, 742–43 (6th Cir. 2015) (discussing the difference between fully-insured and self-insured insurance plans), *vacated and remanded on other grounds by Mich. Catholic Conf. v. Burwell*, 578 U.S. 993 (2016).

Second, United served as both a claims administrator and a fiduciary for the self-insured plans it oversaw. *United Healthcare Servs., Inc.*, 2022 WL 1481171 at *1. United's status as a

8

fiduciary for the self-insured plans it administers means that it was required to sue on behalf of the plans to recoup the self-insured plans' losses. *See id.* Moreover, United alleged that its role as a claims administrator for the self-insured plans was governed by Administrative Services Agreements ("ASAs") that allowed it to recover overpayments caused by fraud or abuse. *Id.* Here, LMRMA has not alleged it stands as a fiduciary for the local governments or that its role as an administrator for the local governments allows it to recover overpayments. LMRMA only asserts that it is a "payor" that received TeamHealth's claims and paid them on behalf of the local governments, with the money those local governments contributed. [Doc. 27, ¶¶ 1, 7, 59-60, 66, 72, 110, 112, 147, 159, 171].

Indeed, TeamHealth characterizes LMRMA as only the administrator for the self-insurance fund created by local governments [Doc. 29, pg. 21]. It asserts that the participating local governments who finance the fund that LMRMA administers "bear the risk and suffer any injury of the type alleged in the [Second Amended Complaint]." [*Id.*]. TeamHealth argues that any alleged overcharge would have been to the local governments paying the claim out of the self-insurance fund and not LMRMA [*Id.*, pgs. 21-22]. LMRMA responds that TeamHealth's motion to dismiss "simply refute [its] well-pled allegations," which shows that TeamHealth's motion should be denied [Doc. 33, pg. 13]. LMRMA contends that the Court must accept the allegation that it overpaid and suffered harm as true at this stage of litigation [*Id.*]. LMRMA asserts that nothing in Louisiana law prevents it from being a payor [*Id.*, pg. 14]. Lastly, it contends that its allegation that it is a payor who suffered a loss is all that matters [*Id.*, pg. 15].

Although the Court must accept as true LMRMA's factual allegation that it was the "payor" of TeamHealth's allegedly upcoded claims, the Court need not accept LMRMA's conclusion that it suffered an injury for standing purposes. *See Parsons v. U.S. Dep't of Just.*, 801 F.3d 701, 710 (6th Cir. 2015). The Court's analysis of a plaintiff's standing is a question of law that must be

9

determined by the Court first. *See Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 793 (6th Cir. 2009). Taken in that light, LMRMA's allegation that it was a "payor" alone is insufficient to show that it suffered an injury for standing purposes. LMRMA does not assert that it used its own assets to pay TeamHealth's claims or that the alleged upcoding caused it some form of monetary injury. Instead, LMRMA hinges its argument on the fact that it paid TeamHealth's invoices. [*See* Docs. 27, ¶¶ 1, 7, 59-60, 66, 72, 110, 112, 147, 159, 171; 33, pgs. 10-17]. But LMRMA, by its own admission, paid those invoices with the local governments' money. [*See* Doc. 27, ¶ 13]. The Court fails to see how LMRMA was injured when it never was at risk of losing its own assets because of TeamHealth's alleged upcoding. Further, LMRMA has not alleged that it suffered a form of indirect harm because its allegations only go as far as showing that it was the "payor." It does not allege that it charges the local governments a processing fee for its services, let alone that it indirectly risked those processing fees by paying TeamHealth's allegedly upcoded claims.

Therefore, LMRMA has not alleged an injury-in-fact to support standing under Article III of the Constitution to bring the instant suit. Because LMRMA lacks standing, the Court does not have jurisdiction to address the merits of LMRMA's claims and need not delve further into the remaining arguments in TeamHealth's motion to dismiss. Accordingly, TeamHealth's motion to dismiss is **GRANTED** in this respect.

### B. LMRMA's Motion to Amend Second Amended Complaint

LMRMA moves to amend its Second Amended Complaint to alter the class definition for which it seeks certification [Doc. 36, pg. 1]. Specifically, LMRMA now seeks to certify a class of "[a]ll self-funded plans and *other nongovernmental* payors that compensated TeamHealth or an entity billing on its behalf for medical treatment in the United States or its territories during the four years prior to the filing of the Complaint in this action." [*Id.*] (emphasis in original). Thus, the only change that LMRMA wishes to make to its Second Amended Complaint is to include the

phrase "other nongovernmental" in its class definition. [*Id.*] (emphasis omitted). LMRMA contends that the purpose of its amendment is to clarify the scope of the class of plaintiffs [*Id.*, pgs. 4-5]. LMRMA argues that the Court should allow it to amend its class definition because TeamHealth will not be prejudiced [*Id.*, pg. 8].

TeamHealth responds, opposing LMRMA's motion to amend [Doc. 38]. It argues that LMRMA's motion is futile because LMRMA lacks standing to bring the instant suit and has failed to state its claims as a matter of law [*Id.*, pg. 7]. TeamHealth next contends that LMRMA is not an adequate or typical representative of the proposed amended class [*Id.*, pgs. 7-8]. TeamHealth also argues that LMRMA's motion is futile because the proposed amended class is unmanageable and would require the Court to address individualized questions of law and fact that predominate over the questions common to the class [*Id.*, pgs. 8-13]. LMRMA replies that TeamHealth's arguments are inappropriate for this phase of litigation because discovery has not concluded [Doc. 39, pgs. 2-3]. According to LMRMA, TeamHealth's arguments are better suited for resolution at the class certification stage [*Id.*, pgs. 3-6].

Federal Rule of Civil Procedure 15(a) provides that leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a). "In deciding whether to allow an amendment, the court should consider the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001). A proposed amendment is futile if the amendment could not withstand a motion to dismiss. *See Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

The Proposed Third Amended Complaint is futile because it could not withstand a motion to dismiss by TeamHealth. The Proposed Third Amended Complaint suffers from the same

11

deficiency as the Second Amended Complaint because both filings would be the same, except that the Proposed Third Amended Complaint adds "other nongovernmental" to the proposed class definition [Doc. 36, pg. 1] (emphasis omitted). Even with that change, the allegations in the Proposed Third Amended Complaint still would not show that LMRMA suffered an injury-in-fact to grant it standing to bring the present suit, as discussed above. Accordingly, LMRMA's Motion to Amend [Doc. 35] is **DENIED** as futile.

## IV. CONCLUSION

For the reasons stated herein, TeamHealth's Motion to Dismiss [Doc. 28] is **GRANTED** and LMRMA's Motion to Amend [Doc. 35] is **DENIED**. This matter is **DISMISSED WITHOUT PREJUDICE**.[2] The parties Joint Motion for Entry of Protective and Confidentiality Order [Doc. 44] is **DENIED AS MOOT**, and the telephonic status conference set for December 6, 2022 is **CANCELLED**. A separate judgment shall enter.

SO ORDERED:

s/ Clifton L. Corker<br>
United States District Judge

---

[2] "[D]ismissals for lack of jurisdiction should generally be made without prejudice." *Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005); *see also Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 F. App'x 6, 11 (6th Cir. 2018) (explaining why a court cannot dismiss a case with prejudice when it lacks jurisdiction to address the merits).

12